I see you're also appointed under the Criminal Justice Act and the court appreciates you're taking that task. I appreciate the appointment. Good morning your honors. May it please the court. My name is Nate Nieman and I represent Donnie Spencer in this appeal. Donnie is a 70 year old lifelong drug addict. He was addicted to heroin for a number of years and he began selling heroin and crack cocaine in the Quad Cities and eventually police began investigating him in connection with a conspiracy to distribute crack cocaine and heroin with his nephew and eventually they arrested Mr. heroin I'm sorry Mr. Spencer when they seized heroin and crack cocaine from his home and while he was in the custody of police they asked him about a woman named Cosetta Manley who according to an officer that testified at trial was Spencer's girlfriend or quote just a female he knows and specifically what they were interested in is what they would find in Manley's home which turned out to be ammunition. I know that he mentions a safe and a key. Did he always use singular when he referred to the safe or did he ever say safes? Your honor he only used singular in fact on page 106 of the trial record the officer states that he told me in his bedroom there would be a safe and he thought that there was a weapon in there but he wasn't a hundred percent sure what kind and when confronted later after they discovered that there was two safes that the key that he had indirectly given officers from Miss Sanders keychain didn't open up both safes when they confronted him with that fact he responded that he hadn't accessed the safe in approximately two years and had actually physically seen the guns there and then could not recall if he possibly sold them and that's at page 193 of the trial record. So they went back and asked him after they found two safes and he didn't engage in a conversation about safe number two? He didn't and that's one of the things that makes the knowledge element here with respect to constructive possession so difficult for the government to prove. Am I remembering correctly that his social security card was found in the safe in question or papers with his name on it? Well actually your honor the papers that were located in the safe actually belonged to Wendy Sanders who was unlike Cosetta Manley kind of a intermittent girlfriend Miss Sanders was his live-in girlfriend and it was her keychain that contained the key that opened the first safe which had nothing of evidentiary value in it and it was Miss Sanders who testified against Mr. Spencer at trial that had access to the safes and she indicated that during her I think that what makes this case different. Was she a cooperating witness? I'm sorry? Was she a cooperating witness? Had she been charged? She had not been charged your honor. She had been involved in some of the offense conduct. She had conducted some of the deliveries on Mr. Spencer's behalf but she had not been charged. She was not a co-defendant in the case. She could be potentially considered a co-conspirator but she wasn't a co-defendant and what this case what makes this case different from cases in which the court has affirmed these convictions under similar circumstances in other words where a defendant's purported contraband is found basically in another person's home usually in the testimony from that person that that was in fact the the item belonging to the defendant and oftentimes as the Cruz court stated in 2002 the eyewitness testimony is also coupled with forensic or physical evidence and in this particular case we have no eyewitness testimony from Miss Manley or Miss Sanders implicating that implicating Mr. Spencer as the one who possessed the ammunition that was found in the safe so that makes this case distinguishable from Boyd, McCracken, Perkins and Holmes which are cases that I've cited here so you you have a case rather where this case is like the Ways case where you have where you have contraband that's located in the girlfriend's home in the basement in a can and you have no direct testimony from the girlfriend that the ammunition that was found in the can was the defendant's it's all it's all basically circumstantial at that point and there's nothing directly directly connecting to him to that. Of course in Ways the discussion of that count were after we had affirmed the conviction of three other counts and there's no indication that the reversal on this particular count which we called a close call had any impact on sentencing. Well that's true. It's not addictive but it's not the strongest and I mean to be perfectly blunt even if this court reverses this conviction it's not going to impact his sentence either but having a conviction for a 922g offense is going to impact how he does his time in prison so it's not it's not something that that is in effect harmless it does have real-world consequences for Mr. Spencer and I think that it also has real-world consequences for other defendants if this court issues a published decision with respect to the ways in which individuals can be held accountable for items that are located in other people's homes that they may have no knowledge or control of. So she, Ms. Sanders is the best testimony about this safe and she says that she didn't access it she doesn't know how her paperwork got in there but she doesn't say that was Mr. Spencer's safe or that is Mr. Spencer's. Does she does she put it on him at all? Here are the four things that Ms. Sanders says. She says she's familiar with the safe belonging to Spencer, A safe. She was not familiar with the ammunition or magazines that were found in A safe. She did not know how the mail with her name on it got into the safe and that she has personal access to the safes but did not access the safe with the ammunition and magazines in it and that she had never seen those items before. All of those statements are contained within pages 152 to 154 of the trial record. And we have no prints, we have no one else putting Mr. Spencer with this safe? No, Your Honor. We have no forensic evidence. The only evidence that's tying Mr. Spencer to the safe is the fact that he found the safe at Ms. Manley's home. He believed that there were weapons in it and that's essentially it. There was the utility bill in Ms. Manley's house was in Mr. Spencer's name but the trial testimony shows that Mr. Spencer had been living with Ms. Sanders at a different residence for three to four years. So it could have been that the, and of course this is speculative, that the utility bill had been in Mr. Spencer's name at one time and that it was just never taken out of his name. And in fact if the bills had been paid then there wouldn't be any reason not to. So I am reaching the end of my time so I will conclude. Well, I have a question. In your view, does the fact that it was a bench trial affect this issue? Well, Your Honor, the fact that it was a bench trial, the judge is presumed to know the law. And this is a fact finding? That's correct. But so it's clear error of view? Well, Your Honor. And the judge, from our perspective, should be viewed like a jury? On this issue? On this particular case, I mean to be sure. I think that's true. I'm just making sure. Yeah. I'm not missing something. No, no. The judge, it was a bench trial and the court's fact finding should be treated the same as a jury's fact finding. As far as the standard review here though, it would be de novo. The court doesn't have to make, doesn't have to write out findings, right? No, but the court did, in this particular case, recite the court's reasoning for why it believed that Mr. Spencer was guilty on this count. Thank you. If there are no further questions, I will conclude. Thank you. Ms. Schneider? Good morning. May it please the court, my name is Tori Schneider and I represent the United States. Taking the evidence in a light most favorable to the verdict in this case and the inferences, there is sufficient evidence to prove this offense beyond a reasonable doubt. I would like to correct a couple of things. First of all, in response to your Honor's question, Judge Menendez, the law enforcement did not ask Mr. Spencer about the safes after finding them. What had happened was Sergeant Furlong had conducted his initial interview with Mr. Spencer, obtained this information about what they would find at Ms. Manley's house. They then went to execute that warrant. In the meantime, Detective Carter sat with Mr. Spencer and they had the conversation in which Mr. Spencer discussed, there's two guns over there, and had that conversation. And then they then notified Detective Carter, no guns were here, and so it was just sort of a relay between law enforcement. They didn't then have another interview with Mr. Spencer about the safes that were found. So whether it was formal or not, I didn't remember that there was a post-conversation, that's why I asked. They didn't then go back and say, hey, we found two, or hey, we found ammo in one, but not the one with the key. There was no clearing up of the question marks? There was not. Okay, thank you for clarifying that. Yes, thank you. I believe that the best evidence, and I think your Honor's question was, what is the best testimony about these safes? The government's position is that the best evidence about these safes would be Exhibit 92B, the interview with Mr. Spencer in which he, when Sergeant Furlong is asking him, hey, we're going to go over to this other residence, what are we going to find there? And Mr. Spencer indicates there's a thousand dollars there in a safe. And I'll admit, I did not do a very good job of highlighting this fact in my brief, but in the safe with the ammunition and Ms. Sanders' indicia is a thousand dollars. So when the law enforcement... In this, in Safe 2, as I've been thinking about it. Yes, your contraband is the $1,000 that Mr. Spencer said initially they were going to find. And that is what started the whole conversation about the safes. So that, and then when asked, where are these safes? That's when he says, in my bedroom closet. And then Sergeant Furlong says, so in her bedroom closet? And Mr. Spencer says, in my bedroom closet. And... But it was never, you just slipped into plural. You said conversation about these safes. It was only ever singular, right? Safe. With Mr. Spencer, yes, that is correct. Thank you. Because one of the other things I did want to correct is that Ms. Sanders' testimony at trial, she did admit to knowing about both safes. But yes, Mr. Spencer did only refer to one safe. He did admit that it could be accessed with a key or a combination. And if you look at the photos in Exhibits 99 and 101, you'll see that that is also the case. The key that the law enforcement obtained did not open that safe. Safe number two, as your Honor is considering it. The key opened the other safe that didn't contain anything of evidentiary value. However, the safe containing the contraband ammunition could have been opened with either a key or a combination, as Mr. Spencer accurately described. Did they ever find the key to the second safe? They did not. And so then, after Mr. Spencer corrected law enforcement saying, it's in my bedroom closet, the law enforcement said, okay, so besides the safe inside your bedroom closet, is there anything else we'll find in your bedroom? And that's when he says, there's a weapon. I'm not sure what kind. It's been a long time. At the end of this recording, at the end of Exhibit 92B, Mr. Spencer says, in fact, we just got that place. So in contradiction to what Mr. Niemann just posited, that perhaps these utilities have been in his name for some time, that's just not true. Mr. Spencer admitted, we, himself and Ms. Manley, had just gotten that residence. He put the utilities in his name. Not here to talk about his choices of living with Ms. Sanders and also whatever his relationship was with Ms. Manley. The fact of the matter is that this is clearly a secondary residence for Mr. Spencer. There is joint occupancy, and so, you know, dominion and control needs to be shown in some other way. And here, it is through the defendant's admitted knowledge, he brought, he is the one who brought up a safe. He brought up the $1,000 that was found. He brought up of his belief that he thought a weapon, to the first officer, a weapon. To the second officer, two weapons. When he was told that they were not found there, he said, well, I could have sold them. It's been a long time. It's been a while. As the district court found, what was actually in one of the safes was ammunition for two separate types of firearms. And so, this case is clearly distinguishable from Waze, or Ramos, but specifically Waze. And as Judge Loken, you noted, I was going to note, this court, in Waze, said that was a close call. And here, we have so much more. In Waze, that was a secondary residence. There was some evidence that he stayed there occasionally. Here, we have utilities in Mr. Spencer's name. Mr. Well, there's a turnabout at fair play also. You cite, oh, this is Patton, not Waze. And Patton was a supervised release revocation case where the preponderance standard was emphasized in affirming. Yes, Your Honor. So, that ain't the best. Absolutely, Your Honor. I expected that question. However, given the fact-intensive nature of this type of issue, I wanted to emphasize that those facts, granted, yes, at a lower standard, that those facts are more akin to this case. However, in Waze, that being a close call, here, we have so much more. So, if Waze was a close call, this has to overcome that threshold, Your Honor. In Waze, there was no evidence tying him to Waze, to the space where the contraband was found, or knowledge of the contraband. In here, we obviously have Mr. Spencer tied not only to the space that it was found, but also to the knowledge. I mean, he knew the safe, at least a safe was there. He knew what was in it because he said they would find $1,000 and there was $1,000 there. And he said, we have a key to a safe. Now, the key went to the other safe, but he said, we have it here at the residence. It was on a key ring that Ms. Sanders provided. So, what we have here, Your Honors, is joint constructive possession. There's no dispute that Ms. Sanders had access to the safes. She testified as much. And so, the fact that she also had access, and had admitted to having access, doesn't take anything away from Mr. Spencer's knowledge or access. At trial, was she asked, where's the key for the second safe? No, Your Honor. She was asked if she knew the combination. So, the joint here may be three, four, five, six people. Because somebody had the key. It was access... Unless, well, unless one of them hid it, I suppose. But then why wasn't that found out? It could also be access with a combination, Your Honor. Not just a key. But, yeah. I'm a little, I'm not sure that it matters, but I'm a little fascinated that Mr. Spencer would testify, we just got that place, and not remember that there were two safes. I mean, it feels like there's something that I can't tease out, that no accusation, but wasn't really cleared up at the trial. There's a safe that we have the key for. It is not the safe where the predicted thousand dollars is. It doesn't respond to the key. And he is a recent, I can't, I can't understand this array of facts. And he only ever says safe over and over again. So, I think there's, I have two responses to that. One, I do wish that law enforcement would ask him further questions after discovering what was discovered at Ms. Manley's residence. Unfortunately, that didn't happen. Second response is, as Mr. Neiman indicated, Mr. Spencer is, at that time, was almost 70 years old, and was a lifelong heroin addict. And so, while he knew the big parts of what was going on, and could identify the important, I would argue important aspects of this, I think maybe some of the details got lost along the way. Thank you. Thank you. Was there any attempt at trial to link the ammunition with guns? I mean, was it handgun ammunition? There was handgun and rifle ammunition, Your Honor. And no witness testified about what guns it was used with? No, Your Honor. No firearms were located. I know, I know that it's a freestanding 922 ammunition by itself, but sometimes the linkage is important. Thank you. Government would ask that you affirm. Thank you. Is there a button time? Mr. Neiman, I think we understand the issues. It's been well briefed and argued, and we'll take it under advisement. Thank you, counsel. Thank you.